**E-Filed: 03-17.10**

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESLEY ARD, an individual; STEVEN ARD, and individual,<br><br>    Plaintiffs,<br><br>vs.<br><br>FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of IndyMac Bank, F.S.B.,<br><br>    Defendant. | CASE NO. CV 09-04115 MMM (AJWx)<br><br>ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |

    On July 11, 2008, the Office of Thrift Supervision ("OTS") closed IndyMac Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as the bank's receiver pursuant to 12 U.S.C. § 1821(c)(2)(A). The FDIC made deposit insurance determinations for accounts held at IndyMac and notified depositors of the determinations via letter. Some depositors later filed actions in this district challenging the FDIC's deposit insurance determinations and/or alleging wrongful acts by IndyMac Bank, its former employees, or the FDIC as receiver. Gnei and Araham Nasoordeen are among the depositors who filed suit. The FDIC has now filed a motion seeking to dismiss plaintiffs' claims under § 1821(d), or in the alternative, to have summary judgment on the claims entered in its favor, under the

doctrine of prudential mootness.[1] Plaintiffs have not opposed the motion.[2]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds that this matter is appropriate for decision without oral argument. The hearing scheduled for March 22, 2010 is vacated and taken off calendar.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 27, 2008, Araham V. and Gnei Z. Nasoordeen filed a complaint against the FDIC.[3] They allege that the FDIC failed to provide insurance coverage for at least $100,000.00 that they deposited in IndyMac accounts. Plaintiffs' eight-paragraph complaint does not allege any facts particular to the Nasoordeens.[4] On May 18, 2009, the court held a case management conference, at which it confirmed that the Nasoordeens sought to pursue claims based on alleged acts or omissions by IndyMac and its agents prior to the bank's failure.

## II. DISCUSSION

### A. Judicial Review of Claims Arising Out of the IndyMac Failure

#### 1. Types of Claims

There are at least two types of claims depositors can assert against the FDIC in the wake of

---

[1] Notice of Motion and Motion of Defendant Federal Deposit Insurance Corporation as Receiver to Dismiss Plaintiffs' Claim Against the FDIC Receiver for Lack of Jurisdiction ("Motion"), Docket No. 48 (Jan. 15, 2010).

[2] Defendant Federal Deposit Insurance Corporation as Receiver for IndyMac Bank, F.S.B.'s Reply Memorandum in Support of its Motion to Dismiss Plaintiffs' Claim Against the FDIC Receiver ("Reply"), Docket No. 51 (Feb. 2, 2010).

[3] See Complaint, Docket No. 1 (Aug. 27, 2008).

[4] *Id.*, ¶ 7. The complaint provides no details regarding the type(s) of account(s) the Nasoordeens held at IndyMac, the amounts deposited in the accounts, the amount of FDIC insurance allowed, or the substance of any correspondence plaintiffs received from the FDIC following IndyMac's collapse. Plaintiffs merely stated that "[b]ecause of the shortness of time to file this Complaint, and the reluctance of Plaintiffs to place unnecessary personal detail in the public record, this Complaint is made in this summary form, but Plaintiffs will make available to the Court and Defendant all necessary details and documents to review the determination made." (*Id.*, ¶ 8.)

IndyMac's collapse. First, depositors can dispute the FDIC's deposit insurance determination respecting their IndyMac account(s). The court's review of such a decision is limited by statute to examining whether the FDIC's determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. See 12 U.S.C. § 1821(f)(4) ("A final determination made by the [FDIC] regarding any claim for insurance coverage shall be a final agency action reviewable in accordance with [5 U.S.C. § 706], by the United States district court for the Federal judicial district where the principal place of business of the depository institution is located"); 5 U.S.C. § 706 ("To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . .").

Depositors may also have claims based on acts or omissions by IndyMac or its employees *before* the bank's failure that relate to the classification and insurance eligibility of their deposits. To assert this type of claim, the depositor must first exhaust the administrative claims procedure set forth in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. §§ 1821(d)(3)-(8). Specifically, individuals wishing to dispute alleged errors by IndyMac or former IndyMac employees must file a proof of claim with the FDIC within a specified period of time. Once a proof of claim is filed, the FDIC has 180 days to allow or disallow the claim, and notify the claimant of its decision. See 12 U.S.C. § 1821(d)(5)(A)(i) ("Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim").

If the FDIC disallows an individual's § 1821(d)(5)(A)(i) claim, or if the 180-day review period expires without a decision by the FDIC – whichever occurs earlier – a claimant may elect one of two courses of action. See, e.g., *Helm v. Resolution Trust Corp.*, 43 F.3d 1163, 1165 (7th Cir. 1995)

("[Resolution Trust Corporation][5] actions are largely governed by the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). . . . The RTC may find in favor of the claimant, or it may 'disallow' the claim, i.e., reject it. 12 U.S.C. § 1821(d)(5)(D). . . . FIRREA generally forbids federal judicial review of RTC actions. 'Except as otherwise provided in this subsection, no court shall have jurisdiction over . . . any claim relating to any act or omission of . . . the [RTC] as receiver." 12 U.S.C. § 1821(d)(13)(D). FIRREA further explicitly forbids judicial review of RTC disallowances made pursuant to § 1821(d)(5)(D). 'No court may review the [RTC's] determination . . . to disallow a claim.' 12 U.S.C. § 1821(d)(5)(E). However, FIRREA loosens the prohibition on federal jurisdiction in two circumstances: where the RTC has already reviewed its own disallowance, and where the claimant files a fresh suit in federal district court. But *unless a claimant takes one of these two options*, § 1821(d)(5)(E) bars any federal jurisdiction over a disallowed claim" (emphasis added)); see also *Office & Professional Employees Int'l Union, Local 2 v. FDIC*, 962 F.2d 63, 65 (D.C. Cir. 1992) ("A party dissatisfied with [the] FDIC's initial determination is given the choice between seeking administrative review (in which case the [FDIC's] second instance decision is subject to court challenge under the familiar 'arbitrary and capricious' standard) and proceeding directly to district court. [12 U.S.C. §§] 1821(d)(6), (7)").

The claimant's first option is to request that the FDIC internally review its decision to disallow the administrative claim. If the FDIC agrees to undertake an internal review, it will hold a hearing and make a final determination. Once the FDIC has completed its review, the claimant may – if still

---

[5]The Resolution Trust Corporation ("RTC") was the statutory predecessor to the FDIC. See, e.g., *Resolution Trust Corp. v. First American Bank*, 155 F.3d 1126, 1127 (9th Cir. 1998) (stating that the RTC was the FDIC's predecessor). The RTC was abolished in 1995, and replaced by the FDIC. See 12 U.S.C. § 1441a(m)(1) ("The [RTC] shall terminate not later than December 31, 1995. If at the time of its termination, the [RTC] is acting as a conservator or receiver, the Federal Deposit Insurance Corporation shall succeed the [RTC] as conservator or receiver"); see also *Post v. FDIC*, No. 96-55116, 1996 WL 717094, *1 n.* (9th Cir. Dec. 6, 1996) (Unpub. Disp.) ("Pursuant to the Resolution Trust Corporation Completion Act, 12 U.S.C. § 1441a(m)(1), the Resolution Trust Corporation ('RTC') was terminated and its functions statutorily succeeded by the Federal Deposit Insurance Corporation ('FDIC'). Accordingly, the FDIC is substituted for the RTC as the defendant in this action"). Since the FDIC is governed by FIRREA, just as the RTC was, case law interpreting the statute during the period the RTC was in existence is instructive.

4

unhappy with the FDIC's determination – file suit in federal district court seeking judicial review. See 12 U.S.C. § 1821(d)(7)(A) ("If any claimant requests review under this subparagraph in lieu of filing or continuing any action under paragraph (6) and the [FDIC] agrees to such request, the [FDIC] shall consider the claim after opportunity for a hearing on the record. The final determination of the [FDIC] with respect to such claim shall be subject to judicial review under [5 U.S.C. § 706]"); see also *Helm*, 43 F.3d at 1165 ("First, if the RTC has itself reviewed a disallowance and again denied a claim, the federal courts may then review the disallowance. The claimant must request internal RTC review, and if the RTC agrees to the request, it will hold a hearing and make a determination. 12 U.S.C. § 1821(d)(7)(A). Only if that point is reached, and the complainant is still dissatisfied with the result, may the claimant then file suit in federal district court asking for judicial review of the RTC's disallowance. *Id.* The Administrative Procedure Act [5 U.S.C. § 706] would govern such judicial review").

A claimant must request administrative review of the disallowed claim within 60 days of the FDIC's final determination. See 12 U.S.C. § 1821(d)(6)(A) ("Before the end of the 60-day period beginning on the earlier of – (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the [FDIC] is receiver; or (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may request administrative review of the claim . . .").

The claimant's second option is to proceed directly to federal district court. See 12 U.S.C. § 1821(d)(6)(A) (". . . the claimant may . . . file suit on such claim . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located . . ."); *Helm*, 43 F.3d at 1165 ("Second, the dissatisfied claimant may avoid further dealing with the RTC. He may return to square one, and, under 12 U.S.C. § 1821(d)(6)(A), file suit against the RTC in federal district court, not for review of the RTC's disallowance, but for relief on the underlying claim. Such a suit ignores the RTC's disallowance and allows *de novo* examination of the claim by the federal courts. FIRREA explicitly gives the federal courts jurisdiction over such a suit. 12 U.S.C. § 1821(d)(6)(A)"); *Starkman v. Resolution Trust Corp.*, No. 93 C 5850, 1994 WL 577233, *4 (N.D. Ill. Oct. 18, 1994) ("Likewise, the Second and Third [C]ircuits have interpreted these provisions to merely require that a claimant first present its case to the RTC under the administrative procedures established

by FIRREA before seeking relief in the federal courts. *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3d Cir. 1991). Based upon the language of the statute and the persuasive authority cited, this court finds that Starkman properly exhausted his administrative remedies by presenting his claim to the RTC, and then filing suit within sixty days of the disallowance of the claim"); *Bueford v. Resolution Trust Corp.*, 991 F.2d 481, 486 (8th Cir. 1993) ("FIRREA is not a model of statutory clarity. . . . However, a reading of the statute as a whole clearly spells out when and how judicial review is available. We are particularly persuaded by the interpretation advanced by other circuits that section 1821(d)(5)(E) directs the district courts to analyze claims against failed banking institutions de novo," citing cases); *Office & Professional Employees Int'l Union, Local 2*, 962 F.2d at 65 ("FIRREA is strict in its demand that claimants first obtain an administrative determination. Congress was concerned, however, about the constitutionality of entrusting to executive agency adjudication claims that ordinarily lie within the province of the courts. Accordingly, Congress instructed district courts to 'determine' claims against failed banks *de novo*, rather than merely to review, for error or abuse, [the] FDIC's initial decisions. See [18 U.S.C.] § 1821(d)(5)(E), (6), (7); H.R. Rep. No. 54, 101st Cong., 1st Sess., pt. 1, at 418-19, reprinted in 1989 U.S.C.C.A.N. 86, 214-15"); see also *Nants v. FDIC*, 864 F.Supp. 1211, 1217 (S.D. Fla. 1994) ("The term 'de novo' means 'a fresh, independent determination of the matter at stake; the court's inquiry is not limited to or constricted by the administrative record, nor is any deference due the agency's conclusion.' *Doe v. United States*, 821 F.2d 694, 697-98 (D.C. Cir. 1987). In making this fresh and independent determination, therefore, the Court may consider all of the evidence presented at trial, regardless of its presentation to the FDIC during the claims review process").

A claimant choosing this second option must file suit within 60 days. See 12 U.S.C. § 1821(d)(6)(A) ("Before the end of the 60-day period beginning on the earlier of – (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the [FDIC] is receiver; or (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may . . . file suit on such claim . . .").

The Nasoordeens filed a proof of claim with the FDIC on October 14, 2008. As of that date, they had already filed this action, which was stayed pending the FDIC's consideration of their claim. When

the claim was disallowed on April 1, 2009, the stay was lifted, with the effect that plaintiffs elected to proceed in district court and filed suit within 60 days of the FDIC's determination.

### 2.     The FDIC's Payments on General Unsecured Claims

"There is no question that the FDIC may pay creditors with receiver's certificates instead of with cash." *Battista v. F.D.I.C.*, 195 F.3d 1113, 1116 (9th Cir. 1999) (citing *RTC v. Titan Financial Corp.*, 36 F.3d 891, 892 (9th Cir. 1994) (per curiam)). Section 1821(d)(10)(A) authorizes the FDIC, as receiver, to "pay creditor claims . . . in such manner and amounts as are authorized under this chapter." In *Titan*, the Ninth Circuit concluded that the FDIC could use receivership certificates to pay claims because requiring cash payments would subvert FIRREA's comprehensive scheme, including § 1821(i)(2)'s limitation on an unsecured general creditor's claim to a pro rata share of the proceeds from liquidation of a financial institution's assets.  See *Titan*, 36 F.3d at 892 (citing *Franklin Bank v. FDIC*, 850 F.Supp. 845 (N.D. Cal. 1994)).  In *Battista*, the Ninth Circuit reaffirmed this holding, noting that "[t]o require the FDIC to pay certain creditors in cash would allow those creditors to 'jump the line,' recovering more than their pro rata share of the liquidated assets, if the financial institution's debts exceed its assets." *Battista*, 195 F.3d at 1116-17.

It is also the case that the general liabilities of a bank in receivership are entitled to a lower priority of payment than depositors:

> "The National Depositor Preference Act ('NDPA') establishes that creditors of a failed bank are to be paid . . . in the following order of priority: 1) Class 1 claims consist of the receiver's administrative expenses, 12 U.S.C. § 1821(d)(11)(A)(i); 2) Class 2 claims are the failed institution's deposit liabilities, *id.* § 1821(d)(11)(A)(ii) . . . ; and 3) Class 3 claims are general liabilities of the bank, *id.* § 1821(d)(11)(A)(iii) . . . .   In many cases, Class 1 and 2 claims exhaust the liquidation assets, leaving no funds to pay Class 3 claims." *Adagio Investment Holding Ltd. v. F.D.I.C.*, 338 F.Supp.2d 71, 74 n. 4 (D.D.C. 2004).

Under this payment scheme, were plaintiffs to prevail on their claims alleging acts or omissions by IndyMac and its employees before the bank's failure, they would obtain receivership certificates in the amount of their recovery. These certificates would make plaintiffs general unsecured creditors in

7

possession of "Class 3 claims" under § 1821(d)(11)(A), who would be paid only after the receiver's administrative expenses and the failed institution's deposit liabilities were satisfied.

### B. Whether Plaintiffs' Claims Must Be Dismissed Under the Doctrine of Prudential Mootness

#### 1. Legal Standard Governing Motions to Dismiss Under Rule 12(b)(1)

Federal courts lack subject matter jurisdiction to hear claims that are moot. See *In re Burrell*, 415 F.3d 994, 998 (9th Cir. 2005) ("If the controversy is moot, both the trial and appellate courts lack subject matter jurisdiction, and the concomitant 'power to declare the law' by deciding the claims on the merits" (citations omitted)); *Institute for Wildlife Protection v. U.S. Fish and Wildlife Service*, No. CV-07-358-PK, 2007 WL 4118136, *10 (D. Or. July 25, 2007) (resolving a question of prudential mootness in the context of a motion to dismiss). A defendant who seeks dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1) can facially challenge the sufficiency of the jurisdictional allegations in the complaint; when this type of attack is mounted, the court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of the plaintiff. *Ass'n of Am. Med. Coll. v. United States*, 217 F.3d 770, 778-79 (9th Cir. 2000); see *Valdez v. United States*, 837 F. Supp. 1065, 1067 (E.D. Cal. 1993), aff'd, 56 F.3d 1177 (9th Cir. 1995).

Alternatively, the party challenging subject matter jurisdiction can proffer evidence extrinsic to the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When extrinsic evidence is submitted, the uncontroverted allegations in the complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor. . . ." *AT&T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)); see also *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (same).

#### 2. Prudential Mootness

Two varieties of mootness exist: Article III mootness and prudential mootness. Under Article III, section 2 of the United States Constitution, federal courts have jurisdiction to adjudicate only actual "Cases" or "Controversies." U.S. CONST., art. III, § 2, cl. 1. "'[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Seven Words LLC*

8

*v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)); see also *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) ("The twin pillars of standing and 'case or controversy' go to the heart of Article III jurisdiction. The corollary to these principles is that federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists"); *Rosetti v. Shalala,* 12 F.3d 1216, 1223 (3rd Cir. 1994) ("Article III does not permit federal courts to decide moot cases").

"On the other hand, prudential mootness, '[t]he cousin of the mootness doctrine, in its strict Article III sense, is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" *Ali v. Cangemi,* 419 F.3d 722, 724 (8th Cir. 2005) (en banc) (quoting *Chamber of Commerce v. United States Department of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). "Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power, i.e., the court 'should treat [the case] as moot for prudential reasons.'" *Cangemi*, 419 F.3d at 724 (quoting *United States v. (Under Seal)*, 757 F.2d 600, 603 (4th Cir. 1985)).

"Under the doctrine of prudential mootness, there are circumstances under which a controversy, not constitutionally moot, is so 'attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant.'" *Fletcher v. United States*, 116 F.3d 1315, 1321 (10th Cir. 1997) (quoting *Chamber of Commerce*, 627 F.2d at 291). "Where it is so unlikely that the court's grant of [remedy] will actually relieve the injury, the doctrine of prudential mootness – a facet of equity – comes into play. This concept is concerned, not with the court's power under Article III to provide relief, but with the court's discretion in exercising that power." *Penthouse International, Ltd. v. Meese*, 939 F.2d 1011, 1019 (D.C. Cir. 1991).

The Ninth Circuit has never adopted or rejected the doctrine of prudential mootness. In *Hunt v. Imperial Merchant Services, Inc.*, 560 F.3d 1137 (9th Cir. 2009), the court alluded to the doctrine in rejecting an assertion of anticipatory mootness, i.e, an argument that an appeal might become moot because of an impending decision in another appeal. *Id.* at 1142. The Ninth Circuit held that it need not "dismiss a live controversy as moot merely because it may become moot in the near

future"; it noted, however, that "[p]erhaps some cases that are 'anticipatorily moot' might permissibly be dismissed [based on the] doctrine of 'prudential mootness,' adopted by some of our sister circuits, under which a court can dismiss an appeal not technically moot if 'circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief.'" *Id.* (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997), and citing *Chamber of Commerce*, 627 F.3d at 291).

        The prudential mootness doctrine has been adopted by the First, Third, Fourth, Fifth, Sixth, Eighth, Tenth, and D.C. Circuits; no circuit or district court has rejected it. See *F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 14-15 (1st Cir. 2000) (affirming the dismissal of § 1821(d) claims under the doctrine of prudential mootness); *Sierra Club v. U.S. Army Corps of Engineers*, 277 Fed. Appx. 170, 172-73 (3d Cir. May 14, 2008) (Unpub. Disp.) ("The central question in a prudential mootness analysis is 'whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief,'" quoting *International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987)); *(Under Seal)*, 757 F.2d at 603 (a court may treat a case "as moot for prudential reasons," including the court's "inability to given an effective remedy under the circumstances now developed and with the imprudence of deciding on the merits a difficult and sensitive constitutional issue whose essence has been at least substantially altered by supervening events; which is not likely to recur in its original form in respect of these appellees; and which in its altered form is now subject to determination in a more appropriate forum and litigation setting"); *281-300 Joint Venture v. Onion*, 938 F.2d 35, 38 (5th Cir. 1991) (dismissing "on prudential grounds" where "there will never be any assets with which to satisfy a judgment"), cert. denied, 502 U.S. 1057 (1992); *Greenbaum v. U.S. E.P.A.*, 370 F.3d 527, 534-35 (6th Cir. 2004) ("Under the doctrine of prudential mootness, we decline to reach the specific issue of whether Ohio's NSR program should have been fully approved prior to redesignation as the circumstances have changed, and we can no longer afford petitioners any meaningful relief on this point"); see also *Cangemi*, 419 F.3d at 724; *S. Utah Wilderness Alliance*, 110 F.3d at 727; *Penthouse International*, 939 F.2d at 1019.

        In addition, courts within the Ninth Circuit have consistently held that prudential mootness

is a viable doctrine. *In re Nelson*, 391 B.R. 437, 443 (B.A.P. 9th Cir. 2008) ("The test for prudential mootness of an appeal is whether the appellate court can grant the appellant any effective relief in the event that it decides the matter on the merits in its favor"); *Natural Resources Defense Council v. Norton*, No. 1:05-CV-01207 OWW LJO, 2007 WL 14283, *7 (E.D. Cal. Jan. 23, 2007) (acknowledging the existence of the doctrine of prudential mootness, but declining to dismiss because the government defendant had not indicated an intent to change its operations); *Institute for Wildlife Protection v. U.S. Fish and Wildlife Service*, No. 07-CV-358-PK, 2007 WL 4117978, *7 (D. Or. Nov. 16, 2007) ("The central inquiry as to prudential mootness is whether a court should exercise its discretion by finding a case moot because the Court cannot grant meaningful relief"); *Defenders of Wildlife v. Martin*, 454 F.Supp.2d 1085, 1103-04 (E.D. Wash. 2006) (stating that the withdrawal of a biological opinion of the Fish and Wildlife Service might render a claim prudentially moot, but holding that the case was constitutionally moot due to the limited nature of the declaratory relief plaintiffs sought); *American Rivers, Inc. v. NOAA Fisheries*, No. CV-04-0061, 2004 WL 2075032, *3 (D. Or. Sept. 14, 2004) (citing, but declining to apply, the doctrine of prudential mootness where defendant's practices were not being substantially revised and defendant has not indicated that it intended to change its practices); *Sierra Club v. Babbitt*, 69 F.Supp.2d 1202, 1244 (E.D. Cal. 1999) (applying the doctrine of prudential mootness, and quoting *S. Utah Wilderness Alliance*, 110 F.3d at 727-78).

      The First, Fifth, and Eighth Circuits have applied prudential mootness in circumstances identical to those that confront the court here. In *Kooyomjian*, following publication in the Federal Register of a decision by the FDIC that the claims of "unsecured creditors could not be satisfied out of [the bank's] receivership assets and were therefore worthless," the First Circuit held that, even were plaintiffs to prevail on their claim that the bank made negligent misrepresentations before its failure, recovery was unavailable "in light of [the] FDIC's worthlessness determination." *Kooyomjian*, 220 F.3d at 13. See also *id.* at 15 ("The FDIC's worthlessness determination is unchallenged and . . . precludes any relief for defendants even it they were successful on their negligence claim and obtained a favorable judgment").

      Similarly, in *Adams v. Resolution Trust Corp.*, 927 F.2d 348 (8th Cir. 1991), the Eighth

Circuit upheld a district court's dismissal on prudential mootness grounds of common law fraud claims against the Federal Savings and Loan Insurance Corporation ("FSLIC"), a statutory predecessor to the FDIC, following a determination by FSLIC's Board of Directors that the bank's "assets were insufficient to meet the claims of general creditors." *Id.* at 354. The Eighth Circuit concluded this "meant that the court could not grant [the plaintiff] any effectual relief" and thus that dismissal was appropriate given the "'futility of effective relief should [plaintiff] prevail.'" *Id.* (quoting *In re AOV Industries, Inc.*, 792 F.2d 1140, 1147-48 (D.C. Cir. 1986)).[6] The Fifth Circuit has had occasion to examine prudential mootness in the context of activities of the FDIC or its statutory predecessors on multiple occasions. In *Joint Venture*, the court concluded first that it was bound by the agency's determination that unsecured creditor claims would be worthless. *Joint Venture*, 938 F.2d at 38 (holding, in dismissing a suit against a failed thrift on prudential grounds, that it was bound by the Federal Home Loan Bank Board's ("FHLBB") determination that there would be no assets with which to satisfy any judgment). Relying on the agency's determination, the Fifth Circuit upheld the district court's decision to dismiss on prudential grounds. *Id.* See *First Indiana Federal Savings Bank v. FDIC*, 964 F.2d 503, 507 n. 7 (5th Cir. 1992) ("The FHLBB's worthlessness determination not only established the value of First Indiana's unsecured claims, it also binds the courts hearing actions on those claims").[7]

---

[6] The Eighth Circuit noted that "[a] Bank Board determination of worthlessness is a 'final agency action, which is reviewable under the provisions of the Administrative Procedure Act [ ] in an action against the Bank Board, but not subject to collateral attack through discovery or other means in individual lawsuits against the receiver.'" *Adams*, 927 F.3d at 355 n. 15 (quoting *Federal Savings & Loan Insurance Corp. v. Locke*, 718 F.Supp. 573, 586 (W.D. Tex. 1989)).

[7] See also *First Gibraltar Bank, FSB v. Smith*, No. 3:89-CV-1537-P, 1993 WL 797457, *3 (N.D. Tex. Sept. 28, 1993) ("[T]he Bank Board's finding is dispositive on the issue of whether the FDIC could satisfy any unsecured creditors claims out of [the failed bank's] liquidated assets"); *McNeily v. United States*, 839 F.Supp. 426, 429 (N.D. Tex. 1992) ("[T]he Bank Board's determination of worthlessness evidences the impossibility of effective relief, and is sufficient to support dismissal on prudential mootness grounds. . . . The Bank Board's determination of worthlessness is not open to collateral attack"); *Jones v. Richardson Savings & Loan Association*, Civ. A. No. 3-90-1650-H, 1992 WL 84446, *3 (N.D. Tex. Feb. 7, 1992) ("The Court concludes that FDIC/Receiver has made . . . a showing [that assets will never be available to satisfy a judgment]. As explained above, FSLIC as receiver transferred almost all of the assets of Richardson to American Federal; the remaining assets were transferred to FSLIC Corporate. The net effect of those transactions was that no assets were left in the receivership

In *First Indiana*, the Fifth Circuit reiterated that, once there has been an agency determination that claims against the FDIC as receiver are worthless, those claims "should be dismissed for prudential reasons because there is no practical purpose in requiring their adjudication on the merits." *Id.* at 507. See also *F.D.I.C. v. Foxwood Management Co.*, 15 F.3d 180, 1994 WL 24911, *4 (5th Cir. Jan. 14, 1994) (Unpub. Disp.) ("A claim against the FDIC as receiver should be dismissed when there will never be assets available to satisfy the claim. . . . We have stated that the FHLBB's determination of insolvency and the worthlessness of unsecured creditor claims is binding and cannot be collaterally attacked in claims against the FDIC. . . . Thus, even if a defendant obtained a judgment for money damages against the FDIC, the amount of damages owed by the FDIC is the amount that a defendant is entitled to in liquidation – nothing").

The court finds the reasoning of the First, Fifth, and Eighth Circuits persuasive. In the present case, all of the assets of IndyMac Bank were transferred to IndyMac Federal Bank in a pass-through receivership pursuant to an agreement that the amount, if any, realized from the final liquidation of IndyMac Federal Bank's obligations would be paid to the IndyMac Bank receivership.[8] The FDIC Board of Directors concluded that the amount realized from the resolution

---

to satisfy Plaintiffs claims").

[8]A pass-through receivership is described in an FDIC report as follows:
"The bank regulator [Office of Thrift Supervision] execute[s] a pass-through receivership in which all deposits, substantially all assets, and certain non-deposit liabilities of the original institution instantly 'pass through the receiver' to a newly chartered federal [bank], subsequently known as 'the conservatorship.' The regulator then appoint[s] the [FDIC] as conservator of the new institution, which place[s] the [FDIC] in control of the institution. . . . The [FDIC] retain[s] the majority of the former institution's employees, who continue[ ]to perform the same functions they had before conservatorship; however, the day-to-day management and ultimate authority was given to the [FDIC]-appointed managing agent.
* * *
At the time the conservatorship [is] resolved, either through a sale or deposit payoff, the [new] institution [is] placed into a receivership (the second receivership). Both receiverships, the initial pass-through receivership and the second receivership, pa[y] unsecured creditors and other claimants on a pro rata basis according to the recoveries within each receivership." FDIC, *Managing the Crisis: the FDIC and RTC Experience 1980-94*, August 1998, at 115, quoted in Tobias M.C. Asser, LEGAL ASPECTS OF REGULATORY TREATMENT OF BANKS IN DISTRESS 123 (2001).

and liquidation of IndyMac Federal Bank was insufficient to pay its liabilities; as a consequence, there was no amount to pay to the IndyMac Bank receivership. In particular, the liabilities of IndyMac Federal Bank exceed its assets by more than $2.7 billion. Moreover, the remaining deposit liabilities of IndyMac Bank exceed the assets of IndyMac Bank by more than $8.6 billion. Given this disparity between assets and secured depositor liabilities, the FDIC Board of Directors concluded that general unsecured creditors of IndyMac Bank and IndyMac Federal Bank "will recover nothing and [that their claims] have no value."[9] This determination is conclusive and binding on the court.

"Irrespective of the abstract validity of any of [plaintiffs' § 1821(d)] claims against [IndyMac], there are no set of circumstances under which [plaintiffs] can recover any money or property as a result of those claims. It follows that litigating such claims would require a significant dedication of resources by [plaintiffs], the FDIC, and the district court. Because this expenditure of time and money will never result in [plaintiffs] obtaining the relief [they] seek[ ], a trial on the merits would be a completely hollow act. Consequently, [ ]dismissal of [plaintiffs'] claims against the FDIC and that court's judgment in favor of [the FDIC is] proper on grounds of prudential mootness." *First Indiana*, 964 F.2d at 507 (footnote omitted).

In addition to being on all fours with cases decided by the First, Fifth, and Eighth Circuits, the court finds that invoking prudential mootness in this case is appropriate under the tests that other circuits apply. The factual inquiry the Tenth Circuit employs when considering the prudential mootness doctrine is: "[H]ave circumstances changed since the beginning of the litigation that forestall any occasion for meaningful relief[?]" *Fletcher*, 116 F.3d at 1321 (quoting *S. Utah Wilderness Alliance v. Smith*, 110 F.3d at 727). Here, the FDIC Board of Directors' determination of worthlessness represents a changed circumstance that occurred after the litigation commenced, and that forestalls any possibility that plaintiffs can obtain meaningful relief on their § 1821(d) claim. At best, upon prevailing they can become general unsecured creditors of a failed bank who have no chance of receiving remuneration on their receivership certificates.

---

[9] 74 Fed. Reg. 59,540 (Nov. 18, 2009).

14

The D.C. Circuit asks whether "a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Chamber of Commerce*, 627 F.2d at 291. The D.C. Circuit recently reiterated that the primary test is whether a favorable judgment "will provide a real measure of redress." *Foretich v. United States*, 351 F.3d 1198, 1216 (D.C. Cir. 2003). Here, plaintiffs cannot attain a real measure of redress. Considerations of prudence and judicial efficiency therefore militate against issuing decisions that would be largely advisory. Similarly, the principle of comity for the executive branch militates against requiring the FDIC to litigate such claims.[10]

"The Fourth Circuit [has] recognized several factors to consider when deciding whether a case is prudentially moot: (1) the court's inability to give an effective remedy because of developed circumstances; (2) the sensitivity and/or difficulty of the dispositive issue; and (3) the likelihood that the challenged act would recur and evade review." *Smyth v. Carter*, 88 F.Supp.2d 567, 571 (W.D. Va. 2000) (citing *(Under Seal)*, 757 F.2d at 603 ("[Factors] have to do both with our inability to give an effective remedy under the circumstances now developed and with the imprudence of deciding on the merits a difficult and sensitive constitutional issue whose essence has been at least substantially altered by supervening events; which is not likely to recur in its original form in respect of these appellees; and which in its altered form is now subject to determination in a more appropriate forum and litigation setting"). See also *Feldman v. Pro Football, Inc.*, 579 F.Supp.2d

---

[10]The Sixth Circuit has not articulated its own test of prudential mootness, although it cited D.C. and Tenth Circuit decisions in concluding that one case was prudentially moot. *Greenbaum*, 370 F.3d at 534 (citing *S. Utah Wilderness Alliance*, 110 F.3d at 727, and *Chamber of Commerce*, 627 F.2d at 291). In *Greenbaum*, the Sixth Circuit declined to review a challenge to a Environmental Protection Agency ("EPA") rule that was allegedly issued prior to the date that an Ohio county was redesignated an attainment area. Because the EPA subsequently implemented the redesignation, the Sixth Circuit found that were it to remand the rule to the EPA, it would result in duplicative rulemaking; as a consequence, it concluded it could "no longer afford petitioners any meaningful relief on this point." *Id.* at 534-35. The Third Circuit, which has applied the doctrine only to declaratory and injunctive relief cases without deciding whether it applies to cases seeking monetary damages, follows the D.C. Circuit's test, and asks whether a controversy is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." *Sierra Club*, 277 Fed. Appx. at 172 (quoting *Chamber of Commerce*, 627 F.2d at 291).

697, 707 (D. Md. 2008) (applying the factors articulated in *Smyth*). Two of the three factors articulated by the *Smyth* court weigh in favor of a finding of prudential mootness here. As noted, the court is unable to provide an effective remedy. Moreover, the case at hand concerns acts or omissions of IndyMac and its employees. Because IndyMac has failed and no longer exists as an entity, its alleged misconduct cannot recur.[11] The Fourth Circuit applies this factor in constitutional cases because a court must consider "the imprudence of deciding on the merits a difficult and sensitive constitutional issue whose essence has been at least substantially altered by supervening events." *(Under Seal)*, 757 F.2d at 603. Because no constitutional question is presented, the court finds the second factor neutral, weighing neither in favor of nor against a finding of prudential mootness. Because both the first and third factors weigh in favor of a finding of prudential mootness, and the second factor is neutral, the court concludes that it should dismiss plaintiffs' § 1821(d) claim on grounds of prudential mootness.[12]

The court's application of the doctrine of prudential mootness is consistent with those courts in the Ninth Circuit that have considered the question. *In re Nelson*, 391 B.R. at 443 ("The test for prudential mootness of an appeal is whether the appellate court can grant the appellant any effective relief in the event that it decides the matter on the merits in its favor. . . . If it cannot grant effective relief, the appellate court lacks jurisdiction and must dismiss the appeal"); *Sierra Club*, 69 F.Supp.2d at 1244 ("Under both Article III and prudential mootness doctrines, the central inquiry is essentially the same: have circumstances changed since the beginning of the litigation that forestall any

---

[11] The *Smyth* court noted that "[s]ituations evading review include an abortion claim or a claim challenging a ten-day restraining order." *Smyth*, 88 F.Supp.2d at 571 (citing *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994)). It emphasized that this prong concerns situations in which "the judicial process generally exceeds the time-frame of the challenged act." *Id.* Such situations are distinguishable from the instant case both in the sense that the future misconduct by IndyMac Bank is not possible, and in the sense that the harm alleged would be compensable by monetary damages.

[12] Although the Second Circuit has not considered prudential mootness, the Southern District of New York recently found that application of the doctrine was appropriate, noting that the "prudential 'mootness' doctrine assesses whether a litigant's stake in the outcome of the case or controversy continues throughout the life of the lawsuit." *Jobie O. v. Spitzer*, No. 03 Civ. 8331(CM), 2007 WL 4302921, *4 (S.D.N.Y. Dec. 5, 2007).

16

occasion for meaningful relief"); *Natural Resources Defense Council*, 2007 WL 14283 at *7 (same); *Institute for Wildlife Protection*, No.2007 WL 4117978 at *7 ("The central inquiry as to prudential mootness is whether a court should exercise its discretion by finding a case moot because the Court cannot grant meaningful relief"). In each of these cases, a court in the Ninth Circuit held that dismissal on prudential mootness grounds was appropriate because the court could no longer provide meaningful relief.

To the extent plaintiffs' plead a § 1821(d) cause of action, that claim is prudentially moot under all of the tests that courts have articulated. The deciding factor in all reported cases is the inability of the court to provide an effective remedy. Because it could not provide meaningful relief even were it to render judgment in favor of plaintiffs on their § 1821(d) claim, the court dismisses that claim under the doctrine of prudential mootness.

### III. CONCLUSION

For the reasons stated, the court dismisses with prejudice plaintiffs' § 1821(d) claim alleging acts or omissions by IndyMac Bank and its employees prior to the bank's failure.

DATED: March 17, 2010

                                              MARGARET M. MORROW
                                              UNITED STATES DISTRICT JUDGE